v. Nguyen Mr. Hecht, we're ready when you are. Charles Hecht, for the appellant. If ever there was a case where there should be an exception to the continuous ownership rule, this is that case. And this court, in Hans v. Beilu, set forth what the redressability— Yes, Your Honor. The parties went into court and the judge decided this case on a motion to dismiss under 12b.1. Right? Yes. The judge said, no jurisdiction, therefore dismissed. Right? Yes. But it was based on his ruling that there was a lack of standing. But it looks to me like what the debate is about is not whether there is jurisdiction in the sense that the court had the power to adjudicate the claim, but rather whether or not this was an element under Florida law of a derivative suit. But it looks to me like this was really a merits determination that has preclusive effect rather than a jurisdictional question that simply asked whether the court had the power to entertain the claim in the first place. Am I missing something there? No, you're not. So to the—you agree that the district court ought to have decided this is a merits matter rather than under 12b.1 as a matter of jurisdiction? As a practical effect, that's what they did by not analyzing the exemption or the exclusion from the— Right. The reason I ask you is because it seems to me continuous ownership is an element of a cause of action for a derivative action under Florida law. Do you agree with that? Yes. It is an element as a general rule, and what the court did, it basically said, I'm not going to consider the redressability exclusion as you outlined in the Hans case, which says, and this is what the court said, if you have no notice and the purpose of the squeeze-out merger was to get rid of the derivative suit, that is a classic basis for redressability exemption. If the judge was wrong in calling it a dismissal for lack of jurisdiction, and in fact if you drill down into what he did, it was really a resolution on the merits, and if he went beyond the four corners of the complaint and looked at extrinsic materials, then this really was summary judgment, even if it wasn't called that. Is that right? Yes. In effect, what he did on a limited record, which they basically artificially constructed because they knew the third amended complaint was filed before this was ever disclosed, and we put in the record the facts that are needed to support the exclusion. So you don't quarrel with the fact that this was a merits determination on summary judgment and sufficient notice and opportunity was given to the parties? The answer is we do in a way because we were short-circuited and we filed a motion. I really need an answer. You understand why? Yes. It's one thing to say this thing has preclusive effect and quite another to say you can walk into another court at another time that might have jurisdiction, but you agree, whatever this is, it isn't jurisdictional. It's an element of a cause of action for a derivative action under Florida law. Yes. You said you objected. You filed a motion. To saying that it was inappropriate at this time because we had a stipulation that was so ordered that permitted us to do discovery. It was a 56-F motion, right? You wanted more discovery before summary judgment was decided? No, we said, in effect, we didn't say a 56-F motion, no. We said that you'd enter it into a stipulation. We made it, I think, under 12. The basis for that was that we... Wait, wait, wait. You said the district court should do what about the stipulation you had made? Let us file our proposed amended complaint, and then we can rule, and then you can rule on a fuller record. But the complaint wouldn't be evidence itself. You're saying, don't do it on summary judgment, do it on the face of the complaint, but let us file our amended complaint, and do it on the face of that amended complaint. And the evidence that we were getting in discovery to show. You can't have a ruling on the face of the complaint, on the pleadings, and also this selected bit of the evidence. If you go beyond the complaint, you're talking about summary judgment. And that's what we were forced in that position because when the defendants filed this motion, they filed things that were extrinsic to and after the then pending complaint. So yes, they forced it in effect in summary judgment. So your remedy is to say, if you're going beyond our complaint, then what we want to do is respond with our own materials. And you're saying that the material you wanted to respond to was an amended complaint, another amended complaint. Well, we're saying also that we wanted to develop a full record and we'd all agreed that once we found this out, we brought it to the court's attention. Did you say to the judge in words of substance, the discovery is incomplete here. In essence, this is summary judgment. We'll put in whatever we got so far by way of extrinsic material, but we need more time and we got to do more. And here's what we had to do. Because if you did that, I couldn't find it in the record. Just hold for a second. In effect, that's what we did with the so-ordered stipulation. Didn't you put in extrinsic evidence and whatever you had? Yes. On whatever we had, we put in extrinsic evidence. I thought the only discovery dispute, the essential one, was you wanted to compel the production of records from two members of the board who were no longer with the company. And the judge said, no, they're no longer with the company. They don't have control and dominion. And therefore, you can't compel it from them, that the object of your discovery was the wrong party, which is different from saying, I needed more and different discovery. Yes, it is. We also were getting discovery from Sidley. And that's what showed additional evidence that conclusively that the purpose of the case was to get rid of the pending derivative action. And that brings into the second point. Before you can plead that, did you affirmatively plead in your pleading that the ultimate merger with Leading World was for the purpose of squeezing out the plaintiffs? We did that in the fourth amended proposed, fourth amended complaint. But that wasn't filed. I mean, weren't all these motions and everything that was relating to the third amended, was it not? Yes, what they did is at their convenience. There's a predicate before any of your other arguments seem to make sense. That is, that there has to have been error in not letting you file a fourth amended complaint. Yes, that's one of the points that I was going to appeal. Then we evaluate everything in the context of the third amended, which does not complain about the Leading World merger. Is that right? Yes, Your Honor. But it couldn't because it was filed before it was ever disclosed. We have to address the abusive discretion of not letting you file a fourth amended first before we can even get to the substance of a lot of your arguments about how you were harmed. Okay. As to the fourth amended complaint, first, the courts already ruled on their jurisdictional arguments that since there wasn't a final judgment entered, we had the right to file the fourth amendment complaint and it was timely filed. So the only argument that's left is they were unduly prejudiced. Let me ask you on prejudice. How does the fourth, what you wanted to have as your fourth amended complaint, how does it differ from the lawsuit that you have now later independently filed? Okay. Well, the fourth amended complaint contains and maintains the derivative actions. I know it was derivative and the present one is not derivative, but as a practical matter, how are you injured because you can only file a direct claim as you've done now versus not being able to file a derivative? The answer, in effect, it's a kind of mootness you're arguing because we have the direct claims before Judge Moreno. The derivative claims are alive and they're different. They involve different injuries, different theories of law, different time period. I don't understand that. How is it different injuries, different . . . In all cases, you are alleging the very same thing that your clients were squeezed out maliciously and without cause, without giving proper compensation and without giving notice of the merger. Because the direct claims . . . Aren't those the same claims you are bringing independently? No, they're different claims. The derivative claims are before Judge Gale. I understand that one is derivative and one is direct, but the essence of what was done wrong by the defendant, aren't you alleging essentially the same conduct in both? No, there's different conduct. What the derivative claims before the court had to deal with the transaction in 2012, which was the issuance . . . I understand that and you never got to allege the later merger, but you wanted to allege that and that is alleged in your new case, right? Yes, we filed . . . Why isn't your new case sufficient to bring all of the complaints that you have? Because the new case is against certain different defendants that were not involved in the derivative case. The derivative case, you have the CD group, you have the metamining group, you have Ecolab that all participated in the initial transaction, which was the issuance of 94% of the stock for no consideration and we were able to undo that, okay? And so it was undone. So the harm of that seems to be now hypothetical because it was unwound. Well, it was only one part of the original suit. That was one part. The second part is that we believe that the quid pro quo for that was that the defendants could steal the company's operating businesses for no consideration and we were getting close to that situation. Apparently it was sold in the interim to Ecolab, they exercised their option, then Ecolab from what we get in the filings with the SEC and then a subsequent cancellation agreement rescinded that acquisition in 2013. What the defendants are trying to do is get the benefit of avoiding their liability in the derivative action, which is a separate liability and it's a live question. We're almost ready to go to trial in that case against and involves different injuries, different tests. It's a different case. So you don't have the overlap. Let me ask you a different question. Just help me understand. What this thing is that we call the continuous ownership rule, is that a rule of procedure or a rule of substance? And I ask it, are we eerie bound to the Florida law on that subject? Yes. Or if it's a rule of procedure arising under 23.1 of the Federal Rules of Civil Procedure, is this a matter of federal law? It's a matter of state law, Your Honor. Why? It's substantive. It goes to... And it sounds substantive to me. The reason I agree with that, but the reason I raise the question is we really are the predecessor court. The Fifth Circuit looked at this question in Schilling v. Belcher back in 78 and it examined Rule 23.1. There was a derivative action there and the court explained that 23.1 contained two discrete requirements. One was a contemporaneous ownership and the second was continuous ownership and it recognized that the language of the rule expressly required contemporaneous ownership, but they were going to read in and did read in by inference continuous ownership. As a rule of procedure, that was the holding of the Fifth Circuit. If it is indeed a rule of procedure, are we eerie bound to the Florida determination? You see, the reason I raise it is whether... I understand that gives you an option to go into the middle. Is there an exception built into the continuous ownership rule for fraud? Yes. That's really what it comes down to. There is under Florida law, we believe. It seems to me the best you can say is Florida law is silent on that subject. I could find no case where a Florida court built in that kind of exception to continuous ownership. Can you point me? There is none, Your Honor. Okay. The most you can say is, who knows? Maybe it should be built in. They haven't done it expressly. They haven't done it expressly, but we do have the advantage of a Delaware court analyzing the statute, which came on the books in 2000. Okay. I recognize that the Florida law has looked to Delaware to find an answer, but under Delaware law, doesn't it require, and maybe I've misapprehended it, help me with it, but doesn't Delaware require that to build in that kind of exception, it really comes up in a different context, not in a continuous ownership. There's no continuous ownership case in Delaware that I could see that built in an exception for fraud. But even where they do build in an exception for fraud, don't they say that has to be the singular purpose? I think they phrased it a little differently in Berger versus Intellident. They did that way. What Berger said, it's a breach of fiduciary duty not to give timely notice. Because in that case, although they technically complied with the Florida statute, the court said that the reality was they only had four business days' notice, and that was a breach of fiduciary duty, and they could continue with their claim for an exception to, not the continuous ownership rule, the exception to your- I got it, but let me just come back in, the time is very short and you're already over your time, but help me with this. To the extent that we've said as a matter of procedure, 23-1 includes continuous ownership, that would suggest under all the Erie cases that I'm not bound by Florida law. Even if Florida considers it a matter of substance, and even if it looks to me like it is an element and therefore a matter of substance, if we've characterized it as a matter of procedure, then isn't our characterization what governs? If you do, yes, but it's important to point out that in Schilling, they never discussed any- No question about it. They don't struggle with any Erie problem. As a practical matter, I don't know that it makes a difference if Florida law is silent on building in an exception, and no federal law case in our circuit has ever built it in, but there's a Ninth Circuit case out there that refused to build it in. So you've got to establish that we, even if it's a matter of procedure, and we're writing on our own clean slate, that we ought to build in such an exception. Has any federal case ever done that? Not precisely, Your Honor. But imprecisely? Not really, because they've looked under state law. So the answer to my question is no. No, because they've looked under state law. No federal court, not a district court or a circuit court, has ever recognized a fraud exception to the continuous ownership. Oh, no. There's Ward. We cite cases in our brief, and they're cited in hence, where Ward says that if you have fraud in that context, that would be an exception to the continuous ownership. Has any federal court in a published decision ever held that there isn't a fraud exception to the continuous ownership rule? Not to my knowledge. To me, it's a briefing argument about you shouldn't create an exception. Leave that to state courts. Well, this is a situation in which when the argument is made, and if the facts support the exception, if there is one, we can't escape the question. That's right. Because if we hold that we're not going to recognize it, then we're holding there is no exception. That's correct, Your Honor. We're making a determination of state law instead of leaving it up to the state court either way if we decide this case. The answer is yes, and the question is right. But I thought there was a federal case. I thought there was a Ninth Circuit case. Maybe I misread it. Quinn v. Anvil, 620 F. 3rd, 1005. Quinn brings a derivative action against Anvil alleging breach. The court held that 23-1's continuous ownership rule foreclosed the derivative suit since the reverse stock split terminated his statute as a shareholder, and consequently, unlike the remaining shareholders, Quinn couldn't benefit from any recovery. Quinn urged the Ninth Circuit to recognize an exception to Rule 23-1's continuous ownership when a derivative plaintiff's shares are canceled by a transaction consummated for the sole purpose of terminating the right to sue derivatively. Circuit says, uh-uh. The court rejected the argument, holding, quote, we have rejected applying an equitable exception to the continuous ownership requirement, and Quinn provides no compelling reason why we should apply one now. Well, I'm not familiar with Quinn. It wasn't cited in their case. I understand. I understand that. But yes, there is a compelling reason, because it goes basic to the fundamental rights of minority shareholders, that if you permit someone, like in this case, where they're subject to a derivative. No, I don't dispute that you can make a pretty good argument that maybe you ought to build it in to 23-1, which is already built in in this circuit, the continuous ownership rule, and we ought to glom on top of that an exception. I'm simply saying, we've never done it, and to the best of my knowledge, no circuit has done it, and to the best of my knowledge, one circuit seems to have said no. That seems to me to be the state of the law. Well, you have to look, this is a matter of substance under Florida law, and the Florida law. Yeah, but we wouldn't look to Florida law if we had characterized it as a matter of procedure. Right, but if you. Under Erie law, they could call it anything they wanted. If this was a procedural matter, we were obliged to follow our rules of procedure. Isn't that right? Yes, but it's really a substance of matter, Your Honor, because it goes to. We misapplied this as the continuous ownership rule as a rule of procedure. Yes, I think. Am I not bound by what the Fifth Circuit said, even if they got it wrong? But I think the issue was they never discussed the exemption, because they just said outright, you weren't a shareholder throughout, there was no issue raised, and it was a prior statute. No, no, I agree they never discussed the exemption, but they characterized the rule, the continuous under the domain of 23-1, they read it into a procedural rule. And we've briefed that it's really not a procedural rule, it's a substantive rule, and clearly the other cases have looked at this, and the Florida courts have applied it in similar contexts. Thank you, counsel. We'll give you a full three minutes to now hear from opposing counsel.  Counsel, regardless of whether it's procedural or substantive, we can't avoid deciding whether there is a fraud exception to the continuous ownership rule, either procedurally as a matter of federal law, or substantively as a matter of state law, can we? May it please the court. Thank you, Your Honor. That is exactly where I wanted to begin. Yes, you can avoid deciding whether or not it applies. How? He says, I've got the facts, I've pled them, or would pled them if the district court would let me do it, and under those facts, they justify an exception based on fraud, and the district court has not actually ruled on that, implicitly, but to say that, don't worry about it, you don't have to rule on that, that's wrong, we have to rule. Not to rule is to rule in your favor and against him that there is no fraud exception, right? That's not the case, because whether or not there is a fraud exception, on this record, that fraud exception was not invoked, because he may say he had the facts, but as Judge Marcus pointed out, this was a factual attack on jurisdiction under which he was free to attach any declaration setting forth factual availments of fraud that he wanted, and I'll let Judge Marcus address that, but I thought the point was it was treated as a jurisdictional matter and shouldn't have been. Your Honor, under a factual attack on jurisdiction, the court looks outside I'm sorry, I understood, and maybe I just missed it. It's getting on in the week, and not as alert as I was on Tuesday morning, but I thought the point was that to attack or say, assert the continuous ownership rule is not a matter of jurisdiction, it is instead an element of the derivative action. Your Honor Are you contesting that, and are you saying it's jurisdictional? My understanding is it's jurisdictional, and throughout this entire case, both parties in the court treated it How can it be jurisdictional? I know you said it was, I know the district court treated it as such, but isn't this an element of a cause of action for a derivative suit under Florida, whether there is a requirement for continuous ownership? That isn't a question of whether the court has the power to adjudicate the case. That goes to, once it starts adjudicating the case, does it state a claim for a derivative action under Florida? What am I missing here? Your Honor, under the Florida case law, the Timco case, which creates this common law, or continues this common law, continuous ownership rule, it's an element of standing, and standing is subject matter jurisdiction, and the court held that the language they used was, if a plaintiff loses his ownership in the company during the derivative suit, then he no longer has a dog in the hunt, and thus he lacks standing, and if he lacks standing, the court lacks subject matter jurisdiction over the matter. They have treated it as jurisdictional, and the parties in the courts did. The court concluded in Timco, we hold that a plaintiff in a derivative suit must meet the common law requirement of continuous ownership throughout the pendency of the suit. Where did they say, that's a matter of jurisdiction, our power to entertain it, as opposed to a merits analysis of what is contained within the Florida requirement, whether statutory or common law for a derivative action. See, the problem here is that we throw around jurisdiction as a term very loosely, but if you're saying the court doesn't have the power to hear it, that's because there's something in the statute itself that makes it jurisdictional. Congress says this is jurisdictional. Where they don't, we generally don't look at it as a jurisdictional matter, but rather an element of the case. You follow what I'm getting at? I follow what you're saying, your honor. Let's assume, arguendo, that the district court got it wrong. You led him astray, you argued it as a jurisdictional matter, it really wasn't. And that it really was, was a merits determination. And both sides put in everything they had by way of material extrinsic to the complaint. Yes, your honor. Which would effectively have converted it into a summary judgment. Okay, your honor. So I will assume, arguendo. Let's just, in which case it has preclusive effect, but okay, so let's just assume we're at summary judgment rather than on a motion to dismiss. Is this continuous ownership rule something that we look to federal law to write an exception into? Or do we have to ask whether Florida has recognized one or would? You follow my question? I follow your question, your honor. What the Eleventh Circuit said in Hance v. Bailiw, which admittedly is not a published decision, but it is the one case in which the Eleventh addressed this exception and the only one. It said that the continuous ownership rule applied under both Florida law and rule of civil procedure 20.3. I think that's clear. The question is whether we look to Florida law or federal law to build in an exception for fraud. That's what we're talking about. I believe you would look to Florida law to build in the exception. Does Florida recognize that exception? No your honor. Florida does not recognize the exception. Has it ever answered the question one way or the other? It has not answered the question one way or the other. So how can you say it doesn't recognize it? It's never been asked. You just don't know. I'm saying it has not recognized it. And it has not recognized that it doesn't exist either. Correct, your honor. So that brings me to Chief Judge Karn's point. Can we tell from the arc of Florida decision making whether if they were to be presented with the question they likely would build such an exception in? There's nothing in Florida law to indicate that. And that brings us. Nothing one way or the other. There's nothing one way or the other. But what the 11th circuit has always looked at in deciding state law issues is to look for affirmative markers in state court law that would allow it to go further in that direction. Cases that Sigmund Helm self-cites corroborate that, such as the Fritz v. Standard Security Insurance case, which he cites. In that case, the 11th circuit was asked to consider whether Florida courts would enforce a provision from a disability insurance contract that said for the disabled to continue receiving the benefits, they have to remain under the care and maintenance of a physician. And the 11th circuit looked at would that be enforced by Florida courts if treatment was no longer useful? And the court only ruled that Florida courts would not strictly enforce that because it affirmatively found Florida Supreme Court cases and appellate court cases tending to liberally construe those provisions. And here there's been nothing affirmatively. But there's been no decisions strictly construing the requirements. What I'm telling you is if the Florida courts haven't addressed it, we can't say the Florida courts haven't held that, therefore we won't hold it. We have to make some decision. It's a predictive function. Our cases explicitly say when the state Supreme Court hasn't decided a matter of state law, we have two options. One is to predict what they would do. The other is to certify them the question. And we can't just say they haven't mentioned it, therefore we'll assume that they would reject it. Okay, Your Honor. Then that turns us to really the issue that you started with, with my colleague. And that is on this record, could the court have applied? So let's assume, as Judge Marcus brought up, that this was essentially summary judgment. We've, appellees filed this motion to dismiss in October 2015. As reflected in the record, Sigmund took issue with that, felt like that there was some sort of agreement, nowhere, no order, but some sort of agreement that we would not move to dismiss until he had filed a complaint that actually dealt with the merger that divested him of standing. Counsel conferred, there was disagreement on that issue, but agreed to a 35-day extension of time so Sigmund could file the proposed Fourth Amendment complaint to put those facts in a pleading to cite to so that there would be a basis to actually invoke the exception. As the Delaware cases that utilize the exception say you have to have Rule 12b-6 pleadings to actually invoke it, to premise it on. He chose not to file the proposed Fourth Amendment complaint at any time during which the motion to dismiss was pending. It essentially was summary judgment. We went outside the pleadings. The court acknowledged that the other side could go outside the pleadings, and yet there was no declaration or affidavit filed putting forth any factual averments as to any fraud on which this exception could be based. Your point is, even assuming arguenda that you build in a fraud exception, whether under federal law or Florida law, he's put nothing on the table to establish that he would be entitled to it. He put nothing, during the time that the motion was pending, he did not put anything on the table to establish that he would be entitled to it until he filed his motion for a leave to amend after the case was closed, after the dismissal. Notwithstanding a motion to file a new complaint is not the same thing as putting in, does he put in, did he put in any evidence? No, Your Honor. Despite the fact that he had the opportunity, whether you call it a factual attack on jurisdiction or a summary judgment, both sides went out the pleadings. He put in evidence that the broker never received notice of the merger, but no evidence that the actual sheriff... Did he ever ask the district court, in words or substance, for an opportunity to do further discovery so he could establish facts that otherwise would meet a fraud exception? Did he ever say, I need more time, I need to put in other stuff, I have to do other discovery, and if you let me do it, I'll be able to show you that such an exception, which theoretically ought to apply, can be met by me. What he said is that he could allege facts. He didn't file a motion asking that this be stayed or put off or anything like that. Attorney argument-wise, in the response to the motion to dismiss, he argued that appellees as the movements to move to dismiss had not shown that he could not allege facts, and then he submitted an attorney argument saying... Right, but the burden would be his. The burden would be his. The exception to establish an exception to the continuous ownership rule. I'm just asking, whether he ever said in words or substance, I got some data that shows it, or I need more time and discovery to show it. No. He argued that he could allege facts, but didn't put forward anything in front of the request from the court to allow him to file a complaint averting those things or to take additional discovery to do those things, and the timing is very important because, again, we filed a motion to dismiss in October 2015, then gave him a 35-day extension on top of his regular 20 days to respond on the express purpose to file the proposed complaint alleging all this fraud. He didn't do it.  He put forward the court rules in April of the next year, and at no point during any of that time did he come forward to the court and say, I'd like to file a proposed amended complaint. Then the court dismisses in April. He moves for reconsideration, didn't say in reconsideration, well, you dismissed this, but I could have amended and said some, and alleged this fraud. The court denies reconsideration in June of 2016, then in August of 2016, after the case is fully closed, he moves for leave to amend and attaches the proposed fourth amending complaint. So coming back to Judge Karn's very important point of how do you decide this without deciding state law, you can simply say, we're not going to, and this is actually what you did in Hance v. Bailu, the court in Hance v. Bailu said, we're not going to decide whether or not this is true. All right. So if I understand your argument, boil down. One, you don't have to ask the Florida Supreme Court for an answer to the question. It's enough to assume it's so. They can't meet the burden anyway. The court, they can't meet the burden because the court looks at the record that was before. They didn't put in any evidence sufficient from which the court could apply such an exception, even if it applied. You said it perfectly, Your Honor. And critically didn't ask for time to do so. Did not ask for time to do so. And more than both of those, it wasn't even at issue legally because only the third amended complaint was before the court. Only the third amendment. And the third amended did not challenge the leading word, leading world corporation merger. Correct, Your Honor. So it doesn't matter what they could have put in for evidence, the pleadings did not complain that they were injured by that merger. The operative pleading did not, which was the procedural argument that they raised to us as attorneys when we conferred, which is why they filed their motion to strike saying that it was their understanding that we wouldn't move to dismiss until they had filed a complaint that had those allegations. There was no agreement on that. It was a misunderstanding. That's just a misunderstanding. That issue isn't, they're not alleging that you were unfaithful to an agreement among counsel or anything like that. Nothing like that's in the issue. Nothing like that's in the record. It was referred to up here as a stipulation. But the point being that counsel resolved that amongst themselves by giving them a 35 day extension of time so that by the time they were responding to the motion to dismiss, there actually could be a pleading on file so that they wouldn't be stuck with a third amended complaint that did not reference the acquisition, as Your Honor mentioned. That was specifically addressed. Now, in their response to the motion to dismiss, they do, they did assert the same arguments they put in their motion to strike, that procedurally this motion was too early because there had been some sort of implicit understanding that appellees would not move to dismiss, but the court rejected that. There was nothing in the record to confirm that. Are they making an argument here that there was an abuse of discretion by the court in making them amend? No, Your Honor, because they didn't move to amend. That's right. They would have had to affirm it. Until the case was fully dismissed, as you've already said. All right. Thank you. Yes. Thank you, Your Honors, for your time and for the reasons I've expressed and our arguments in the appellee's brief. I would ask that you affirm the orders on appeal. Thank you, counsel. Mr. Heck, would you please address his argument that you didn't timely submit the issue or ask for a continuance to submit the issue about fraud? We did. What we did when we found out . . . First of all, the third amended complaint was filed on August 7, 2014. The freeze-out merger wasn't approved by the shareholder . . . I understand that. . . . until September 9th. He says afterwards. Yes, we went . . . When his motion was pending, even after the court ruled for some time, you didn't submit the Fourth Amendment complaint and argue the fraud exception. When was the first time the district court heard, could have heard from you or read from you fraud exception? What happened, the first time, what we agreed, we went to the court . . . I'm not talking about you and counsel. I'm talking about the district court judge and it's his judgment that we're reviewing. When was the first time that court judge heard from you or read from you the words fraud exception? When we went to the court, long before, the minute we heard about this, we worked with counsel and said, look, we need discovery. We worked out a stipulation permitting us to discover. I still haven't heard you tell me when the first time the district court heard you utter those two words. It's not that difficult, counsel. We did when we filed our response to their motion. Did it contain the word fraud exception? The words fraud exception to the continuous ownership rule . . . We raised that in our initial brief because it's cited in . . . Which initial brief? The initial brief to the motion to dismiss. We brought two motions, which I think the court should understand. We went to the court when we found out about this and we said, look, we need time for discovery so we can find out who are the responsible parties and what the facts are. Everyone agreed, which they conveniently forget, including them, that we could do this. We worked out a procedure . . . All I'm interested in is what the district court heard or read. They heard at the conference. When we submitted it in, we need time to get discovery to find out who is responsible and to address the issue of standing. Everyone agreed, including Schwalien and Way, that we would have that time. You didn't tell the court you needed extra time for discovery in order to explore the fraud exception and whether it applied. We didn't use the words fraud exception. We said to explore what exceptions apply so we can address the standing issue. All right. And the district court did or didn't give you time? They did. What they did is they agreed and so ordered the stipulation. What happened here was when discovery was showing things that were unfavorable to them, they just forgot about the stipulation and the order and just filed their motion. We filed a motion and said, look, that's premature because you're in effect not giving us the opportunity to put in evidence to the court that discovery would indicate. And we've got some evidence, which we did put before the court, that neither our client nor . . . Any other minority shareholders? Any of the minority shareholders got notice. The shareholder minutes showed that there was no one asked for appraisal, no one objected, and the reason why is that the notice that did go out was 40 days after the meeting, which is meaningless, and 40 days after the filing. I understand. And that's in the record. So the first time you mentioned explicitly the fraud exception to the continuous ownership rule was after the district court had ruled, correct? No, we mentioned it in our papers. We cited Ward, the Ward case, which is the fraud exception, which is under Delaware law. We also cited to the district court that there had been two district court cases . . . Before the district court ruled? Yes. Okay. I'm just looking at the same record and telling us two diametrically opposed things. We'll just have to figure it out for ourselves. Help me time-wise. When does the district court enter its order dismissing your case, and then when do you turn around and move for leave to file your fourth amended complaint? I think there was about a three-month differential, Your Honor. You filed the application on August the 11th, 2016. Right. I'm just asking you when the district court ruled on the . . . I think it was about three or four months before. It was in April, I believe, and then re-argument in June. So there was a three-month . . . there was a two to three-month gap. And the answer is straightforward. We'd never sued a law firm before. We wanted to be very careful to see if we really had a claim against them. And getting to Chief Judge Karn's statement, there is indications of what the Florida Supreme Court would do because in factually similar situations, two appellate courts in Florida have adopted an exception to the standing rule. It wasn't to the continuous ownership rule, but it was functionally the same. For instance, in foreclosure research, what they did there instead of a squeeze-out merger, they did a reverse stock split, which in effect, the minority shareholders then became fractional owners, which triggered them to come in and saying, look, we can't be limited to our appraisal rights because the appraisal doesn't take into consideration the value of the corporation's derivative claim. So it's functionally the same, and that court applied an equitable exception to that situation. And there's no court, and it's just an egregious situation where we didn't get notice. In that case, did the court say, we're applying Delaware law because when we don't have law of our own in a corporate responsibility case, that we will then, as a matter of our law, adopt Delaware law? The court didn't say anything like that, did it? No, but the court applied . . . It was just a factual saying, here's a case that we find helpful, and it was a Delaware case, but I guess from your answer and from my recollection, the court didn't say because we have a rule in Florida state law that when there's a gap in our rules, we just adopt the Delaware law. There was nothing like that. No, but what they did is they adopted the reasoning, and the reasoning was . . . Like they could have adopted the reasoning from the Minnesota law if they found one that was persuasive. But the point is that the Delaware law, the Berger v. Hutellidan case, was actually an unconstitutional common law scheme. And so in that case, they found that a 10-day notice, which was technically in compliance, was really functionally not because the beneficial owner who bought the case and the record owners didn't have time to make a determination because it was only four days in a complex situation. So if that is a breach of fiduciary duty, which brings on the fraud exception, then obviously no notice does. Mr. Heck, check note from your counsel. I'm going to give you 30 more seconds. See if you need to correct something. And the second case which he pointed out is that Stanford v. Williams also adopted what's is what Florida law is. Yes, they used Delaware law as they found the analysis persuasive, but they applied it to Florida corporations in similar context. And in Williams . . . We got it. Thank you, counsel. We'll take that under submission.